Good morning, Your Honors, and may it please the Court, Samuel Zakharoff for the Biederman Plaintiffs. I'd like to reserve three minutes, if I may. All right. I'll try to help you out, but please keep track of your own time as well. Thank you very much, Your Honor. The RICO statute at issue here, by its terms, allows any person injured in his business or property by reason of a violation of the statutory restrictions to recover damages. The only question on this appeal is whether the term, any person injured in his business or property, must be read to mean any person who is a direct purchaser where the underlying scheme originates a sales transaction. The District Court so held, and this is error for three fundamental reasons. First, prior to 1970 when RICO was adopted, the term any person was not understood to be restricted to direct purchases. But, Counsel, if you're really going to challenge what the District Court did, it seems to me you have to start with the fact that the District Court was really saying this is the same statute that we find in the Clayton Act. The language is the same. Illinois BRIC, which is a Supreme Court decision, has interpreted the language. They've said what it means. Consumers buy stuff from dealers. Dealers buy from somebody else. That's not enough. That's what they said in Illinois BRIC. That's what they said in Illinois BRIC, which was seven years after RICO was adopted. Well, I understand when it was, but I guess the thing that I'm trying to get you to look at, which is what I worry about looking at here, I have to look at the language here, and I have lots of precedent on the fact that if the language is the same, I'd interpret the same, even from the Supremes, and the language seems to be just the same. And that's what the District Court was stuck with. Yes, Your Honor, I agree that as of the enactment of RICO in 1970, the identical language should be interpreted in identical fashion. I fully agree with that proposition. The question is whether evolutions in the Clayton Act interpretation post-1970, by virtue of that change in the Clayton Act, automatically are transposed to RICO as well. But aren't you really just saying there are policy agreements that say we ought to do something different? There's my interpretation of Illinois BRIC that is, I don't know that I quite agree with the way the Court did it. That's insufficient. But if I have to rebut the presumption that I'm looking at here, I have to show that the statutes were not intended to serve the same function. Yes, Your Honor. And in this particular instance, or that other parts of the text counsel a different interpretation. But the Supreme Court already said in Holmes that the presumption of consistent meaning of the civil RICO and the Clayton are the same. Your Honor, let me take that. I mean, all I'm doing is trying to give you to give me the business because I'm stuck with what's happened here. So let me let me take that in two parts, if I may, Your Honor. The first part is, should we move the RICO understanding in the same way as the Clayton Act? And the second part is, what does Holmes say about that? So let me just separate those, if I may. On the first point, the Supreme Court has repeatedly said the statutes do not move in tandem. And so we have Sedema, we have Horn, we have Bridge, which have rejected aspects of the interpretation of the Clayton Act in the specific context of RICO. And so the question of whether a personal injury counts in Horn, even though it would not for RICO for antitrust purposes, does matter for injured in business or property under RICO. We have Sedema, which interpreted the same by reason of language in a very different way. Antitrust law requires a distinct antitrust injury. Sedema says we reject that as a matter of RICO interpretation. So we have strong evidence that the two do not move in tandem. And then we have the court in Bridge saying quite clearly, don't impose policy reasons why you think RICO should move. You have to stay within the bounds of the statute itself. Now, the district court made – Can we go to Holmes? Because I think Holmes is your toughest case. So I mean in Holmes, which followed after Sedema, it did use exactly what Judge Smith was talking about, using the identical language and the purpose behind Congress modeling civil RICO after the Clayton Act. And it did it under analysis of proximate causation. But all of those same policy reasons that were undergirding Illinois BRIC applied in Holmes as well. Well, it turns out the key thing for us in Holmes is when Holmes does that, whether it does that as a matter of pleading that you must be a direct purchaser or something of that sort or whether it does it under the guise of the policy objectives of Illinois BRIC. And we think, consistent with what this court wrote in Mendoza, that it is the latter which controls. And so if you go back to Holmes and you look at the cert question that was granted in Holmes, the cert question was whether there was standing for the petitioners there in a case in which they were not in the direct line of purchase. They would not have had standing in antitrust under Illinois BRIC. And the court did not answer that question. Instead, the court handled it exclusively as a matter of proximate cause. The concurrence is both sets of concurrences. Four justices said, wait a second, we would have answered that question and we would have answered that the petitioners do have standing here. So there is no member of the court that is in Holmes that is willing to throw the case out as a matter of on the pleadings on the standing question, which is very consistent with the way this court handled the issue in the Canyon County case in which the holding of Canyon County was that there was no standing because the plaintiff had failed to plead proximate cause. And that's what's being understood as the Illinois, the key elements of Illinois BRIC. If one goes to this court's opinion in Mendoza, what one finds is that Illinois BRIC is reduced to three inquiries that must be satisfied. That is, whether there's an apportionment difficulty, whether there's a better positioned party to to effectuate the demands and whether there is a risk of multiple obligations being improperly imposed on the defendant. In this case, we satisfy that because there is no one capable of suing other than the class here. We have alleged as part of our complaint that there is coordination conspiracy between FCA and Cummins. Why can't the dealers sue? The dealers can't sue under the terms of the complaint and paragraph 75. The dealers are captive entities of FCA. They are collaborators of FCA. The allegation we make is that they are agents of FCA, which gets us into one of the exceptions of Illinois BRIC. And it's an exception that's recognized even in the cases that go against us. The Carter case from the Seventh Circuit goes back to footnote 16 of Illinois BRIC and says caution. You have to have a factual predicate for believing that there is somebody better positioned to sue. In this case, they are they're not going to bite the hand that feeds them. They are simply the agents of FCA. And if one looks at the history of Rico, there are no cases, no cases in which franchisees have sued on behalf of injured third parties. And if one looks at antitrust law, I can find no cases where franchisees have sued on behalf of the consuming public. There are cases. But I don't think that's the analysis. It's suing on behalf of yourself for as the directly injured party and purchaser. And that and obtaining trouble damages satisfies the purposes of the statute as a deterrent effect and everything else. But, well, I don't I don't I don't think someone needs to go sue on behalf of someone else. If you're suing on your own behalf for your own concrete injuries, that is the purpose of the statute. That's correct, Your Honor. But I was collapsing the Illinois BRIC because Illinois BRIC says we're going to visit all of these harms onto the direct purchasers. But if they've passed it, you are raising examples of that. You couldn't find anyone who would sued on behalf of someone else. What about examples of people suing on their own behalf as direct purchasers? I found no cases in which franchisees have sued the franchisors for overcharges to themselves or anyone else. The only time this issue has come up in antitrust cases is when the manufacturer has said as a defense, oh, no, you have to sue the dealers. That's the only time it's come up. But there are no cases in which they actually affirmatively sue saying we were overcharged because it's a permanent, ongoing relationship. It's realistically not going to happen. We were to go your way and find that Illinois BRIC's analysis doesn't map on to RICO because of all of the arguments that you've raised. We would be the first circuit to say so. Right. And creating a split with the third, the sixth, and I think the seventh as well. Third, sixth, and seventh. Yeah, have all gone the other way. I believe that the seventh circuit is more nuanced. It's not in the purchaser context. It would create a split with the sixth circuit. And the third? The third, mildly, because it was in the health care context. It's a little bit more complicated, the contractual relationships. But it would create a split with the sixth circuit. There's no question about that. The sixth circuit, we note, was relying on Chief Judge Sutton's Trollinger opinion, which predates all the relevant Supreme Court cases on this point. And so there would be a division between the courts. Yes, we have to acknowledge that. Absolutely. I mean I have to say I'm reluctant to approach this case from policy balancing analyses. And what struck me when reading Holmes was that it started with the statutory hook, the statutory context of the identical language and the purpose behind the passage of the laws before going on and adding justifications that were based on the policy considerations. Why isn't that enough to settle this case here? That's not the holding of Holmes. That's the observation of Holmes. The holding of Holmes is that the petitioner failed on proximate cause. And that's the analysis that we think should prevail here. But the Supreme Court has told us not to get off in the policy. I mean if you take California versus ARC, America Corporation, and you look at that, that was the issue in Illinois BRIC. But then they said the issue in Illinois BRIC is strictly a question of statutory interpretation, which was the proper construction of Section 4 of the Clayton Act. So therefore they again, counselors, don't get off into policy. Look at the statutory construction. And that's frankly the reason I ask my questions to you. Your Honor, I think that Illinois BRIC would not satisfy modern conceptions of statutory interpretation. It is not compelled by the language. And the Supreme Court has cited to the Aretha Treatise as the authoritative. That sounds like a good argument to make to them. But I'm not sure with their control over me that's a good argument to make to me. I mean I can appreciate that. Your Honor, if I can switch gears for one second because I want to get one argument out before my time is up. There is a portion of this case which is not governed by Illinois BRIC at all. At the end of the first paragraph of the district court's opinion, Judge Corley writes that we have a separate set of claims for what happened after the recall, not chain of sale questions, just that the cars were much more or the trucks were much more expensive to operate because of the effect of the recall that people lost the utility of them. That issue was raised in our complaint repeatedly. Judge Corley acknowledged it. It wasn't briefed by Appelli at all. And we think on that question, Illinois BRIC has nothing to say about it. It's simply a harm that came from the misrepresentations and the fraud that's – the pattern of fraud that's been perpetrated here. On that question, I think we have to prevail because there's no finding below as to why that's controlled by Illinois BRIC or anything else. Meaning that you would satisfy the direct injury, direct purchase? Yes. Yes, at that point. We're not – that's not a purchase injury. That's just – that's an injury in the operation. If the district court didn't rule on it, why should we? Well, because we got dismissed on it. Well, I understand. I understand. And we've appealed and there's been – there's no defense. But that wouldn't be part of our interlocutory review because it's just confined to this narrow question, isn't it? It's part of our interlocutory review because it was on RICO grounds and it was dismissed on RICO grounds. And therefore, if it's not supported in the district court's opinion and not defended by Appelli, she has to be reversed on that score. I think she just made a mistake. I think she was – she thought of this as an Illinois BRIC case and just made a mistake on that particular point. All right, counsel. You're down to just about 20 seconds. But I'll put a couple of minutes back on the clock because I know aspirationally you wanted to say a few minutes. Thank you very much, Your Honor. Good morning, Your Honors. Alan Schoenfeld for Cummins. If I can start where counsel for the plaintiffs left off, this argument that there are aspects of plaintiff's RICO claim that fall outside of Illinois BRIC was categorically waived below. I would direct the court's attention to page 132 of the excerpts of records. Judge Corley didn't misunderstand anything about this. She explicitly asked counsel, let me see because I had understood your argument to be this rule does not apply in the RICO context. And if it does apply, then we're out of luck. Are you actually saying something different? And counsel for plaintiffs said, no. Well, I guess what I'm saying is the rule does not apply. The indirect purchaser rule does not apply in the RICO context. Judge Corley then said in her motion to dismiss order, which is at page 4 of the records, plaintiffs do not dispute that if Illinois BRIC applies to civil RICO, their RICO claim fails. Instead, they urge Illinois BRIC should not apply. Then in pitching this as a clean question for 1292B certification, both in the district court and here, the only question put to this court was categorically. And I think they use that language both in their motion to certify in the district court and to this court. They say categorically whether they pose it as a categorical question. And I think you can look at page 2 of their motion to certify and also their petition for interlocutory appeal. So this idea that there are aspects of that claim that fall outside Illinois BRIC, I think, is waived for purposes of the appeal to this court and probably below. But with respect to the substantive question that is before the court, to start where I think counsel on the other side was also leaving off, Congress used identical language in the antitrust laws in RICO to give a cause of action to a person injured in his business or property. And as I think counsel conceded on the other side, the Supreme Court has definitively interpreted that phrase in the antitrust laws to mean a direct purchaser and not an indirect purchaser. And the idea that this Supreme Court would reach a different conclusion, I think, is betrayed or belied by the court's decision in Apple versus Pepper. That is the presently constituted Supreme Court from 2019 with the exception of two justices who I don't think would depart from that reading. And you have a majority and a dissent in that case that are arguing over how strongly to interpret Illinois BRIC. And both of them, the majority and the dissenting opinion, say we are relying on the text of Section 4 as conclusively interpreted by the court in both Hanover Shoe and Illinois BRIC, Kansas versus Utilicorp, and California, which Your Honor cited. So the sole question before this court is whether Congress meant the same thing when it used identical language in RICO whose enforcement mechanism was modeled explicitly on the one in the antitrust laws. And I think faced with this identical language and statutes that were meant to parallel each other in meaningful respect, the canons of statutory construction require this court to adopt the same interpretation unless plaintiffs come up with exceedingly persuasive reasons why the same phrases mean different things in twin statutes. So what do we make of the Supreme Court's recent discussion in the medical marijuana case that these two, that the Clayton Act and RICO are not interchangeable? That last line in the first section of the majority opinion is simply describing Sedema. And I don't think there's any dispute that in Sedema, the Supreme Court said these are not interchangeable for all purposes. In Sedema, the court simply reached the conclusion that the idea of racketeering injury had no parallel in antitrust injury. And it did that by looking at the text. The point is that where the text is identical, you reach the identical conclusion about its interpretation unless something else in the text or context of the statute compels a different conclusion. And so in the antitrust laws, there's good reason for articulating or imposing an antitrust injury requirement. And that goes back to Pueblo where the Supreme Court had to sort of reckon with the gap between Section 7 of the Sherman Act and Section 4 of the Clayton Act. And there's no parallel in RICO. And so, of course, the court reached the conclusion in Sedema that there was no freestanding RICO requirement. Those are – But in that case, as I understand what you're saying, and I'm just trying to make sure, the court looked at the text of the statutes and made their distinction based on the text. Based on the text but not on the language of Section 4. It's not like in Sedema the court said there's any difference between the language of Section 4 and the antitrust laws in 1964C in RICO. They said the court has previously imposed an antitrust standing requirement for reasons that are explained, I think, in Pueblo and other cases. Do we find any parallel in RICO? And the court said no. There's nothing in 1964C or in the broader context that controls that – that compels that construction. And so the court said these statutes taken as a whole are not interchangeable, of course. But that doesn't answer the question of whether 1964C should be interpreted. The reason I question is because it seemed to me that what counsel is arguing is that there's kind of a different policy involved in why Sedema came out a different way. I disagree with that, and I think that Holmes offers that explanation. And, Holmes, you have the court starting with the identical text and essentially saying, under the guise of its proximate cause analysis, these are the same policy rationales that animated Illinois BRIC. I don't think it's any surprise that the separate rules of statutory standing of which Illinois BRIC is a part and proximate cause both have their derivation in proximate cause principles that I think the court recognized in Hanover. She were imported from law that had been on the books. They trace it back to the Supreme Court's 1918 decision in Darnell-Tanzer. And so they both have similar genesis, but they serve different purposes. Can I ask, the proximate cause comes from the by reason of phrase. Does statutory standing come from that phrase as well, or does it come from some other part of the statutory? So the statutory standing, and I think the court has said this as it has reiterated the statutory holding, it is a definition of who is injured in his business or property. And so I think the court refers to that language in Kansas versus Utilicorp, in Apple versus Pepper. But it locates the standing requirement and Illinois BRIC as a part of that in that language of the statute. So they have two different statutory hooks. I think the concepts animating those similar readings are the same. And if you look at the portion of Darnell-Tanzer that the Supreme Court quoted in Hanover, it says two things. First thing it says is there's an accepted principle of proximate causation that you don't go beyond the first step in damages. But then it's very careful to go further. And it quotes the case to say, the carrier ought not to be allowed to retain his illegal property. And the only one who can take it from him is the one that alone was in relation to him. In other words, in Hanover Shoe, this is footnote eight, the Supreme Court was clear that these are two rules on flip sides of the same coin. They derive from the same, what Justice Gorsuch called the ancient rules of proximate causation in Apple versus Pepper. But they manifest in RICO, just as they do in antitrust law, in two distinct requirements. One of statutory standing and one of proximate causation. And the fact that those two things are different is commonplace in the law. This court's decision in County of Oakland or City of Oakland versus Wells Fargo addresses the distinction between statutory standing and proximate cause as two distinct requirements, I think, in that case of the FHA. And Judge Sutton's decision in Trollinger, I think, goes through this at great length to explain that they serve different functions. Statutory standing and Illinois break play a critical gating function at the motion to dismiss stage, whereas proximate causation is down the line and a much more fact intensive notion. But the fact that they have the same sort of point of genesis, I don't think, is simply what animates the way the court approach the language in those cases. I apologize. Was I? Oh, no, I was going to ask you. But finish that thought. I think I'm done. I was going to ask you what's happening with the remaining claims. Is litigation progressing below or has everything been stayed waiting this decision? Very actively litigating below. Discovery is ongoing into the many state claims that are currently allowed to proceed. Class certification briefing begins in May. So the case is actively going forward on the remaining state law claims, both as against Cummins and against FCA. But May is when you expect the class certification issue to be brought before the district court. The motion will be filed in May. It won't be fully briefed until I think the summer or the early fall. I'm happy to answer any other questions the court has or to rest on our briefs. Any additional questions? No, no. Thanks very much. Thank you very much. Counsel. Thank you, Your Honor. Let me pick up directly where Judge Sanchez, the question you asked, Your Honor. The proximate cause analysis is part of the by reason of. And the statutory standing is also derived from by reason of. And this court's opinion in Canyon County and in Mendoza both used the by reason of to define statutory standing and to define proximate cause. And so I think it is the same inquiry that the statutory standing under the language of under the opinions of this court turns on the question of proximate cause. I think that's what Holmes says. Also, I think that's why Mendoza invokes Holmes for this purpose. I think that that's why we have to prevail here, because if there is a proximate cause inquiry, then what follows from that is, are we the best positioned to enforce the recovery? And our argument, as I mentioned before, is that we are the only party capable of doing so. Is there a risk of double recovery of apportionment? No, because the dealers will never make claims under the facts presented and critically under the facts alleged in paragraph 75 of the of the complaint. And we're still on a motion to dismiss. But the facts alleged is that they took their operating orders and they are entirely dependent. They are the agents. Agency has a particular legal meaning. They are the agents of FCA here, one of the alleged co-conspirators. But even if plaintiffs are barred from pursuing this particular claim, there's a one point eight billion dollar fine that came from agency regulation. There are only only for the environmental harms, not for any of these harm, not for any of the harms that are alleged here. I see. But at least with the state law claims, there are alternate avenues of potential deterrent for some of these allegations that have been raised, even if Rico is not one of them. That is that is correct, Your Honor. And there may be claims brought by other people in other states who don't have access to the California state claims. And so I think that the Rico issue is a live issue before this court. And as Judge Nguyen indicated, there's this has been a subject of tremendous controversy in the court. What the Fourth Circuit says, the courts are all over the place on this question. So I think it's incumbent on this court to address this question, even though, as counsel opposite acknowledge, active litigation goes forward and there's all sorts of activity before the district court. All right. Thank you very much. Thank you. We really appreciate both sides argument presented this morning. The matter submitted.
judges: SMITH, NGUYEN, SANCHEZ